Filed 2/28/22  P. v. Martinez CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>DANIEL MARTINEZ,<br><br>  Defendant and Appellant. | B311549<br><br>(Los Angeles County<br>Super. Ct. No. BA133104) |

APPEAL from an order of the Superior Court of Los Angeles County, Shelly B. Torrealba, Judge.  Reversed.

Johanna Pirko, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Amanda V. Lopez and Chung L. Mar, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant and appellant Daniel Martinez challenges the trial court's summary denial of his petition for resentencing under Penal Code[1] section 1170.95. He contends that the trial court erred by finding that he failed to make a prima facie case that he was eligible for relief under the statute. We agree.

## FACTUAL AND PROCEDURAL SUMMARY

In 1997, a jury convicted Martinez of one count of second degree murder (§ 187, subd. (a)), one count of premeditated attempted murder (§§ 187, subd. (a), 664), and one count of assault with a firearm (§ 245, subd. (a)(2)). The trial court sentenced him to 16 years to life in prison, plus an additional life term with the possibility of parole, plus one year. We affirmed the conviction on direct appeal. (*People v. Morales* (Oct. 21, 1998, B111289) [nonpub. opn.] (*Morales*).)

Martinez's convictions resulted from a shooting on the evening of June 3, 1996. Martinez and his codefendants, Mario Morales and Juan Carlos Rodriguez, along with a fourth suspect,[2] were members of the 18th Street gang and "bitter enemies" of the La Mara Salvatrucha gang. (*Morales*, *supra*, B111289, at p. 8.) We described the facts of the case in our prior opinion: "Jose Funes, Paolo Figueroa and the decedent, Germain 'Doggy' Martinez, were drinking beer on the porch of Funes' home. Funes' home is located in the La Mara gang's territory, but Funes was not a gang member. Nor had he ever had any

---

[1] Subsequent unspecified statutory references are to the Penal Code.

[2] The fourth suspect was charged as a juvenile, and his name does not appear in our prior opinion.

problem with La Mara or with the 18th Street gang. Figueroa and Doggy belonged to the Francis Street clique of La Mara.

"About 9:30 p.m., three men walked up to the sidewalk gate to the house. Someone said, 'La Mara.' Someone screamed ' "La Mara Salvatrucha," ' and Figueroa thought it was one of his homeboys. Doggy responded, ' "rifa," ' slang for 'rules' the area. The three men walked to the porch. Doggy asked what clique they belonged to, and the three assailants started shooting. After the shooting, the assailants ran together toward Hoover Street.

"No one shot from the porch. Doggy died from multiple gunshot wounds. Funes was wounded in the leg. Figueroa was not hit." (*Morales*, *supra*, B111289, at p. 3, fn. omitted.)

Two police officers were patrolling nearby, heard gunshots, and pursued a car fleeing from the scene. They apprehended Martinez, Morales, Rodriguez, and the fourth suspect, and found two handguns discarded nearby. At a field show-up, Figueroa told police that Martinez was not present for the shooting but did not say whether the other three were involved. Figueroa later told a prosecutor that "he would not identify the shooters in court because of the rules against being a 'snitch.'" (*Morales*, *supra*, B111289, at p. 5.)

In our prior opinion, we stated that Martinez had been "convicted on an aiding and abetting theory of second degree murder, assault with a firearm, and premeditated attempted murder," and we found that there was sufficient evidence to support the convictions. (*Morales*, *supra*, B111289, at p. 6.) Even if Martinez stayed in or near the car during the shooting, we held that a jury could reasonably conclude that he was a "shot caller" or leader of the 18th Street gang, and that he encouraged his codefendants to commit the shooting as

3

retaliation for a shooting by La Mara gang members two weeks earlier.  (*Id.* at pp. 8–9.)

In 2018, the Legislature enacted Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill No. 1437), which abolished the natural and probable consequences doctrine in cases of murder, and limited the application of the felony murder doctrine.  (See *People v. Gentile* (2020) 10 Cal.5th 830, 842–843.)  Under the new law, a conviction for felony murder requires proof that the defendant was either the actual killer, acted with the intent to kill, or "was a major participant in the underlying felony and acted with reckless indifference to human life."  (§ 189, subd. (e)(3).)  The legislation also enacted section 1170.95, which establishes a procedure for vacating murder convictions for defendants who could no longer be convicted of murder because of the changes in the law and resentencing those who were so convicted.  (Stats. 2018, ch. 1015, § 4, pp. 6675–6677.)

Martinez filed a petition for resentencing on January 28, 2019.  The district attorney opposed the petition on the ground that Martinez was convicted as a direct aider and abettor, not under the natural and probable consequences doctrine.  In his reply brief, Martinez, represented by appointed counsel, claimed that he was eligible for resentencing, arguing that expert testimony identifying him as a shot caller in the gang was unreliable and inadmissible.  He also noted that his attempted murder conviction might also fall within Senate Bill No. 1437.

The trial court denied the petition, finding that Martinez failed to make a prima facie case of eligibility for resentencing.  The court stated that Martinez "was convicted . . . on a[ ] [direct] aider and abettor theory," that in his appeal he "conceded to being an aider and abettor," that "[n]o evidence has been

4

presented . . . establishing the use of an alternative theory of liability" and that "[j]urors were not instructed on felony murder or natural and probable consequence[s] theories of liability."

## DISCUSSION

When a defendant files a facially sufficient petition for resentencing under section 1170.95, the trial court must first determine whether the petitioner has made a prima facie showing for relief. (§ 1170.95, subd. (c).) Our Supreme Court has explained that "the prima facie inquiry under [section 1170.95,] subdivision (c) is limited. Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." ' ([*People v.*] *Drayton* [(2020)] 47 Cal.App.5th [965,] 978, quoting Cal. Rules of Court, rule 4.551(c)(1).) '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' (*Drayton*, at p. 978, fn. omitted, citing *In re Serrano* (1995) 10 Cal.4th 447, 456 . . . .) 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*People v. Lewis* (2021) 11 Cal.5th 952, 971 (*Lewis*).) If the defendant makes a prima facie case, the court must issue an order to show cause and hold an evidentiary hearing to determine whether the defendant is entitled to resentencing. (§ 1170.95, subds. (c) & (d)(1).)

At the prima facie stage, "a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of

5

discretion.' (*Drayton*, *supra*, 47 Cal.App.5th at p. 980.) . . . [T]he 'prima facie bar was intentionally and correctly set very low.'" (*Lewis*, *supra*, 11 Cal.5th at p. 972.)

We agree with Martinez and the Attorney General that Martinez has cleared this very low bar with respect to his murder conviction. In our opinion in Martinez's direct appeal, we stated that he was "convicted on an aiding and abetting theory of second degree murder" (*Morales*, *supra*, B111289, at p. 6), but the Supreme Court has cautioned us that "the probative value of an appellate opinion is case specific, and 'it is certainly correct that an appellate opinion might not supply all answers.'" (*Lewis*, *supra*, 11 Cal.5th at p. 972.) In his original appeal, we reviewed Martinez's conviction only for substantial evidence, and our conclusion that "the evidence sufficiently established Martinez's status as an aider and abettor" (*Morales*, *supra*, B111289, at p. 8) does not establish as a matter of law that he was not convicted under a natural and probable consequences theory.

The trial court denied Martinez's petition in part on the ground that the "[j]urors were not instructed on felony murder or natural and probable consequence[s] theories of liability." This would be a valid reason for finding that Martinez failed to make a prima facie case for resentencing (see *People v. Soto* (2020) 51 Cal.App.5th 1043, 1055–1059), but the trial court appears to have relied on an incomplete set of the jury instructions in reaching its conclusion. Martinez's appellate counsel has submitted excerpts from the trial record showing that the court instructed the jury on the natural and probable consequences doctrine with respect to both murder and attempted murder. The court also stated that Martinez "conceded to being an aider and abettor" on appeal. The

6

court's statement appears to have been based on Martinez's contention on appeal that "the premeditation enhancement [for attempted murder] was improperly imposed on him because he was only an aider and abettor." (*Morales*, *supra*, B111289, at p. 31.) But in his appeal, Martinez challenged the sufficiency of the evidence that he was an aider and abettor. His contention regarding premeditation was simply an argument in the alternative, and we do not understand it as a concession by Martinez that he directly aided and abetted the shooting.

Our review of the record before us leads us to a similar assessment to the one the trial court reached: The prosecution primarily sought to convict Martinez as a direct aider and abettor, rather than under the natural and probable consequences theory. But to deny his petition on this basis would involve factfinding of the kind the Supreme Court in *Lewis* forbade us to do at the prima facie stage. As the court noted in *People v. DeHuff* (2021) 63 Cal.App.5th 428, abrogated on another ground by *Lewis*, *supra*, 11 Cal.5th at page 962, "[i]t is tempting in cases where the trial record includes extensive inculpatory evidence supporting the convictions for horrific crimes to" engage in basic factfinding at the prima facie stage, "and we have empathy for the trial courts that anticipate an evidentiary hearing will have little chance of leading to a different result." (*Id.* at p. 440.) But *Lewis* allows us to deny a petition at the prima facie stage only where the record disproves the defendant's allegations as a matter of law. That is not the case here. Nor may we affirm the trial court's decision on the basis of harmless error. To demonstrate prejudice, a defendant does not need to show a reasonable probability of ultimately obtaining relief. Instead, he must show only that if not for the

7

trial court's error, " ' "his . . . petition would not have been summarily denied without an evidentiary hearing." ' " (*Lewis*, *supra*, 11 Cal.5th at p. 974.) Martinez has done that much.

The Attorney General concedes that Martinez is entitled to an order to show cause and an evidentiary hearing as to his murder conviction, but argues that he must file a new petition to seek resentencing on his attempted murder conviction. We disagree. At the time Martinez filed his petition, relief under section 1170.95 was restricted to defendants "convicted of felony murder or murder under a natural and probable consequences theory" (former § 1170.95, subd. (a)) with no mention of relief for those convicted of attempted murder. In 2021, however, after the trial court denied Martinez's petition, the Legislature enacted Senate Bill No. 775, which amended section 1170.95 to allow defendants convicted of "attempted murder under the natural and probable consequences doctrine" to petition for resentencing. (Senate Bill No. 775, § 2, amending § 1170.95, subd. (a).)

Martinez's convictions for murder and attempted murder resulted from the same conduct, and we are aware of no reason Martinez would be entitled to resentencing on one conviction but not the other.[3] Furthermore, although Martinez did not mention his attempted murder conviction in his petition, he noted in his reply brief below that the Supreme Court had granted review of

---

[3] The jury found that the attempted murder was "willful, deliberate and premeditated," but at the time of Martinez's conviction, this required the prosecution to prove only that the *slayer* acted with premeditation, not Martinez himself. (See *In re Loza* (2018) 27 Cal.App.5th 797, 804.) The jury instructions confirm that the jury could have convicted Martinez of willful, deliberate and premeditated attempted murder on the basis of the natural and probable consequences doctrine.

the question whether Senate Bill No. 1437 applied to attempted murder liability under the natural and probable consequences doctrine and suggested that the court should resentence him on that conviction as well. To require him to file a new petition on the attempted murder conviction alone would be a waste of resources and needlessly delay the proceedings.

## DISPOSITION

The trial court's order denying the petition for resentencing is reversed. On remand, the trial court shall issue an order to show cause and hold an evidentiary hearing on whether to vacate appellant's convictions for murder and attempted murder and resentence him.

<u>NOT TO BE PUBLISHED</u>.


ROTHSCHILD, P. J.

We concur:


CHANEY, J.


CRANDALL, J.*

---

\* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

9